291 N.J. Super. 46 (1996)
676 A.2d 1117
LEILANI KRAMER, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES OF PUBLIC EMPLOYEES' RETIREMENT SYSTEM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 1996.
Decided June 11, 1996.
*48 Before Judges KING, LANDAU and KLEINER.
Gil D. Messina argued the cause for appellant (Malcolm V. Carton, Monmouth County Counsel, attorney).
Stephanie C. Haegley, Deputy Attorney General argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel).
The opinion of the court was delivered by KING, P.J.A.D.
In this case we are required to decide if a veteran can retire from public service with pension benefits, re-enter public service several years later, and aggregate the two periods of service for *49 pension purposes. We conclude that N.J.S.A. 43:15A-57.2 does not permit aggregating the two periods of service where there has been an intervening retirement with benefits paid out and a lapse of service, here four years.
Ray Kramer was born on August 10, 1918. A World War II veteran, he served in the armed forces from October 1942 until his honorable discharge in May 1946. He married Leilani Kramer in 1980; they had three children, now ages 16, 14 and 12. Kramer was first employed in an eligible Public Employees Retirement System (PERS) position in May 1969; he was enrolled in PERS on June 1, 1969. For over sixteen years, he held various elected positions: councilman and mayor of Asbury Park, and then freeholder of Monmouth County.
After accumulating 16 years and 7 months of service credit, he retired effective August 1, 1986 with "a service retirement under option 2." Under this option, PERS allows a retiree to take less than the maximum monthly retirement allowance but provides the same monthly allowance for a named beneficiary after the retiree's death. N.J.S.A. 43:15A-50. If the retiree elects option 2 and then dies before the named beneficiary, the named beneficiary receives a lifetime monthly allowance equal to the amount the retiree was receiving at the time of death. Kramer's wife, Leilani, was his designated beneficiary under option 2.
In November 1990, after receiving retirement benefits for four years, Kramer returned to the public sector in Monmouth County as Superintendent of Elections and Commissioner of Registration. He re-enrolled in PERS under a new account number. He was notified by the Division of Pensions in May 1991 that he qualified as a veteran under the statute. On December 10, 1991 he purchased two years and three months of military service credit at a cost of $12,548.09.
On August 1, 1992, after about one year and nine months of service, Ray Kramer again retired under an option 2 retirement, with a total of four years of service credited under his most recent *50 PERS account, including the purchased credit. He died twenty-seven days later.
Apparently Kramer had believed that he could add the four years in his second retirement account to the 16.58 years in his first retirement account. This would have given him a total of more than 20 years service and allowed him to retire with a more favorable veteran's retirement allowance under N.J.S.A. 43:15A-61b  one-half (50%) of his final salary. Thirty years of service is normally required for the one-half of final compensation maximum benefit (50%). N.J.S.A. 43:15A-48(b). Ray Kramer applied to purchase the veteran's retirement credit at about the same time that he completed his second application for retirement.
Leilani Kramer, his wife and named beneficiary, was notified on October 1, 1992 that she could elect to receive death benefits under either an active (lump sum) or a retired (monthly) status pursuant to N.J.S.A. 43:15A-50. She inquired about receiving a veteran's allowance under N.J.S.A. 43:15A-61b and was informed that her husband had not met the requirements for a veteran's pension. She was told that the service-credit years in his separate PERS accounts could not be aggregated because of N.J.S.A. 43:15A-57.2.
Leilani Kramer appealed the denial of veteran's benefits to the PERS Board on July 31, 1993. On August 26, 1993 the Board notified her that her appeal was denied. She then requested a formal hearing in the Office of Administrative Law before an administrative law judge.
In lieu of a fact-finding hearing, the parties submitted a joint stipulation of facts to the ALJ, who recommended that the Board grant veteran's retirement survivorship benefits pursuant to N.J.S.A. 43:15A-61b. The PERS Board rejected the ALJ's recommendation and reaffirmed its decision to deny veteran's benefits.
This case requires us to construe two allegedly dissonant statutes. N.J.S.A. 43:15A-61b states:

*51 Any public employee veteran becoming a member after January 2, 1955, who shall be in office, position or employment of this State or of a county, municipality, public agency, school district or board of education and who shall have attained 62 years of age and who has 20 years of aggregate service credit in such office, position or employment, shall have the privilege of retiring for service and receiving, instead of the retirement allowance provided under section 48 of this act, a retirement allowance of one-half of the compensation received during the last year of employment upon which contributions to the annuity savings fund or contingent reserve fund are made. The provisions of this subsection shall also apply to any veteran who was a member on January 2, 1955, but whose service was not continuous thereafter. [emphasis supplied.]
As noted, when Ray Kramer retired in 1992 he was a veteran, over age 62, with total public-service credit in his two accounts of more than 20 years.
But another statute prevents aggregating service credit from two separate PERS accounts when a period of retirement has intervened. N.J.S.A. 43:15A-57.2 states:
If a former member of the State Employees' Retirement System or the retirement system, who has been granted a retirement allowance for any cause other than disability, becomes employed again in a position which makes him eligible to be a member of the retirement system, his retirement allowance and the right to any death benefit as a result of his former membership, shall be canceled until he again retires.

Such person shall be re-enrolled in the retirement system and shall contribute thereto at a rate based on his age at the time of re-enrollment. Such person shall be treated as an active member for determining disability or death benefits while in service and no benefits pursuant to an optional selection with respect to his former membership shall be paid if his death shall occur during the period of such re-enrollment.

Upon subsequent retirement of such member, his former retirement allowance shall be reinstated together with any optional selection, based on his former membership. In addition, he shall receive an additional retirement allowance based on his subsequent service as a member computed in accordance with applicable provisions of chapter 84 of the laws of 1954 (43:15A-1 et seq.); provided, however, that his total retirement allowance upon such subsequent retirement shall not be a greater proportion of his final compensation than the proportion to which he would have been entitled had he remained in service during the period of his prior retirement. Any death benefit to which such member shall be eligible shall be based on his latest retirement, but shall not be less than the death benefit that was applicable to his former retirement. [emphasis supplied.]
*52 The parties agree that this provision would have controlled if Ray Kramer had not been a veteran. Under this provision, employees who first retire, later return to public service and re-enroll in PERS, and then again retire, receive two separate pensions from their two separate pension accounts.
In this case, Ray Kramer first retired with about 16.58 years of service. Under his original retirement, he was entitled to a maximum yearly benefit of 16.58/60 of his 1986 final salary of $3,500 as a freeholder. This benefit was suspended during his re-employment. When he again retired in 1992 with a total of four years service credit, his original pension resumed and he also was entitled to 4/60 of his 1992 final average salary of $39,060 for his second retirement benefit. Leilani Kramer, now age 41, claims that because Ray Kramer was a veteran, the requirements of § 57.2 do not apply and under § 61b she, as an option 2 beneficiary, was entitled to a maximum yearly benefit equal to 1/2 of his 1992 final salary.
As noted, Kramer's 1986 and 1992 salaries were quite disparate. His 1986 salary was $3,500 and his 1992 salary was $39,060. As a non-veteran retiree under § 57.2, he would have been entitled to maximum benefits of (16.58/60 x $3,500) plus (4/60 x $39,060), or about $3,575 per year. In contrast, according to Mrs. Kramer's contentions, his maximum benefit should be 1/2 x $39,060, or $19,530 per year.
Veterans' preference statutes, of course, are liberally construed to effectuate their beneficent purpose. Chester v. Dep't of Civil Service, 90 N.J. Super. 176, 179, 216 A.2d 611 (App.Div.), certif. denied, 46 N.J. 606, 218 A.2d 645 (1966). The legislative purpose was to reward those whose military commitments substantially interfered with their civilian lives. See McHale v. Civil Service Comm'n., 178 N.J. Super. 371, 380, 429 A.2d 373 (App. Div.), certif. denied, 87 N.J. 402, 434 A.2d 1081 (1981). This was surely the preferential purpose of N.J.S.A. 43:15A-61b, allowing retirement at half-pay with 20 years "aggregate service credit." This statute in its current form goes back at least to 1954. L. 1954, c. 84, § 61.
*53 We conclude that the very specific and express terms of N.J.S.A. 43A:15A-57.2, adopted in its presently pertinent form in L. 1966, c. 217, § 27, controls the case before us where a member retires, draws a pension, and later returns to public service. We hold that § 57.2 does not permit a member to "aggregate" service for maximum retirement benefits once the service is broken by an intervening retirement. Essentially, N.J.S.A. 43:15A-57.2 provides that after a PERS member retires under any type of retirement other than a disability retirement (N.J.S.A. 43:15A-45 or -46), i.e., a service retirement (N.J.S.A. 43:15A-47), an early retirement (N.J.S.A. 43:15A-41b), or a veteran's retirement (N.J.S.A. 43:15A-61), and later becomes reemployed in a PERS-eligible position, his retirement allowance is cancelled until he again retires. When he returns to work, he must be re-enrolled into the retirement system at the rate of contribution that corresponds to his age at the time of re-enrollment. Upon his subsequent retirement, the statute provides that the retirement allowance based on the first membership is reinstated. The retiree also gets a separate, second retirement allowance from his second membership.
Apparently, non-continuous periods of service, with no intervening retirement, can be aggregated under N.J.S.A. 43:15A-39 which states in pertinent part:
In computing for retirement purposes the total service of a member about to be retired, the retirement system shall credit the member with the time of all service rendered by the member since that member's last enrollment, and in addition with all the service to which the member is entitled and with no other service. (emphasis added).
We have also held that actual service and purchased service credit based on out-of-state employment can be aggregated for purposes of N.J.S.A. 18A:66-71b, a teachers' pension fund and veterans' preference statute analogous to § 61b. Moss v. Teachers' Pension & Annuity Fund, 178 N.J. Super. 460, 429 A.2d 420 (App.Div. 1981) (aggregation of separate types of service credit within a single retirement account).
The Legislature considered it reasonable to treat preretirement and post-retirement periods of service, as here, differently *54 than other kinds of non-continuous service. In the situation before us, the retiree was actually drawing on his first pension account for four years. If he had simply left public employment temporarily, the account would have remained dormant but intact. As PERS points out, under Leilani Kramer's interpretation of § 57.2 a retired veteran "could work for only one year during his second period of public employment and receive a much greater retirement allowance than if the veteran member's retirements were calculated separately based upon two separate PERS accounts," with the consequent specter of actuarial unsoundness. Indeed, adopting appellant's thesis, this technique could be used by any "retired" veteran, even those who originally retired with a full (50%) veteran's pension. While pension statutes "should be liberally construed ... in favor of ... persons intended to be benefitted thereby," Geller v. Department of the Treasury of New Jersey, 53 N.J. 591, 597, 252 A.2d 393 (1969), such construction "should not obscure or override considerations of ... a potential adverse impact on the financial integrity of the [f]und." Chaleff v. Teachers' Pension & Annuity Fund Trustees, 188 N.J. Super. 194, 197, 457 A.2d 33 (App.Div.), certif. denied, 94 N.J. 573, 468 A.2d 215 (1983).
We conclude that a veteran retiree must meet the twenty-year threshold of service credit in one retirement account to qualify under § 61b. Because of § 57.2, service credits cannot be aggregated or added together to reach the requisite twenty years when an actual retirement intervenes. Section 57.2 carefully prescribes the proper mechanism when this somewhat unconventional circumstance arises, no doubt for sound actuarial reasons. Under § 57.2 the old retirement allowance stops and is "cancelled until [the employee] again retires." Id. The rehired employee is re-enrolled and contributes "at a rate based on his age at the time of re-enrollment." Id. The newly unretired employee is also then treated as an active member for purposes of death or disability. Upon "subsequent retirement," the "former retirement allowance" is "reinstated together with any optional selection, based on his *55 former membership." Id. An "additional retirement allowance based on his subsequent service" is then also paid. Section 57.2 thus clearly contemplates two totally separate retirement accounts based on the earnings at the end of each period of service.
Appellant contends that a conflict between § 57.2 and § 61b should be resolved in favor of § 61b, the more specific provision. We find this contention unpersuasive. While § 61b may be very specific as to veterans' rights to retire at half of final year's pay after 20 years of service, § 57.2 is also very specific about the benefits payable where there is both an interruption in service and an intervening retirement. The application of the "specificity" maxim produces at best a toss-up and does not evince a clear and consistent legislative intent that the veterans' statute prevails over the interrupted retirement statute, particularly as the latter statute has a demonstrably clear actuarial objective. See Sheeran v. Nationwide Mutual Insurance Co., Inc., 159 N.J. Super. 417, 422, 388 A.2d 272 (Ch.Div.), aff'd, 163 N.J. Super. 40, 394 A.2d 149 (App.Div. 1978), modified, 80 N.J. 548, 404 A.2d 625 (1979) (general provision of law yields to more specific).
Moreover, a more recently enacted section of the statute is strongly indicative of the true legislative intent. State v. Gerald, 113 N.J. 40, 84, 549 A.2d 792 (1988); State v. One 1976 Pontiac Firebird, 168 N.J. Super. 168, 176, 402 A.2d 254 (App.Div. 1979). The Legislature is presumed aware of its earlier enactments. Mahwah Twp. v. Bergen County Board of Taxation, 98 N.J. 268, 279, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). Section 57.2 is the more recently enacted statute by twelve years.
Another factor also points toward a legislative intent that § 57.2 should control over § 61b. The Legislature clearly specified the exclusions and exceptions to § 57.2. That section specifically excludes any person who first retired due to a disability, i.e., "a former member ..., who has been granted a retirement allowance for any cause other than disability, ..." N.J.S.A. 43:15A-57.2. If intended, the Legislature could have readily added "or is a veteran" to the exclusionary language. It did not.
*56 Also, by contrast, when it wanted to set up an exclusion to § 57.2 in special cases, the Legislature readily did so. See N.J.S.A. 43:15A-57.3, L. 1985, c. 283, § 1.[1] This 1985 amendment excludes a very specific class of veterans who have retired and become reemployed, but only on condition "that the member repays any retirement allowance received." Id. Ray Kramer was not a member of this specific class. This 1985 amendment insures a measure of actuarial soundness through repayment when the eligible member's former account is reactivated. The result urged here by appellant Leilani Kramer contemplates no such reassurance of fiscal soundness. The Legislature had no difficulty in expressly exempting or excluding the disabled, and also former judges who were veterans (if they met prescribed conditions). This careful exclusion of certain persons from § 57.2 also guides our construction that exclusion of veterans in general was not intended. See Allstate v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986).
"[T]he opinion as to construction of a regulatory statute of the expert administrative agency charged with the enforcement of that statute is entitled to great weight and is a `substantial factor to be considered in construing the statute.'" New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978) (quoting Youakim v. Miller, 425 U.S. 231, 235, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701, 706 (1976)). We "accord substantial deference to an interpretation of a statute by the agency responsible for enforcing it." Lally v. Pub. Employees' Retirement Sys., 246 N.J. Super. 270, 273-74, 587 A.2d 303 (App.Div.), *57 certif. denied, 126 N.J. 332, 598 A.2d 890 (1991). Although this deference is not total and the courts remain the final authority, we ordinarily endeavor to follow an agency's reasonable interpretation of its governing statute, if there are no compelling indications that the agency is wrong. Here, there are no such indications.
Finally, Leilani Kramer alleges that Ray Kramer spent over $12,000 purchasing military service credit solely to qualify for the veteran's pension. While this may be true, no basis for an equitable estoppel has been shown or even argued. The Board rightly observes that "it is the PERS member's employer, not the Division of Pensions and Benefits or the PERS Board, which has the duty to keep its employees apprised of all duties and obligations under the PERS statute." See N.J.S.A. 43:15A-29[2]; N.J.A.C. 17:2-1.5; Krah v. State, 130 N.J. Super. 366, 368, 327 A.2d 248 (App.Div. 1974). Ray Kramer perhaps was unaware of § 57.2 when making his military-service-credit purchase and honestly believed that he would be entitled to a 50% final salary veteran's retirement allowance when he retired for the second time in 1992. However, the fact that he or his widow received less than they expected cannot guide our decision in this case. There is neither any evidence nor any claim that Ray Kramer detrimentally relied on any incorrect representations by the Division of Pensions or its agents, or that he was ever advised by them that § 57.2 would not apply to him.
The purchase of service time here did make sense, even if a full veteran's pension was not available. Leilani Kramer will receive a greater monthly benefit under the second retirement than she otherwise would have received. Of the four years service credit in the second retirement account, 2.25 years were purchased. Without the purchased service credits, the maximum benefit would have been computed by multiplying the final salary by 1.75/60, or *58 about $1,139 per year. With the purchased credit, the final salary is multiplied by 4/60, or about $2,604 per year. The $12,000 expenditure did purchase an increased lifetime benefit, although smaller than the Kramers had hoped to receive.
Affirmed.
NOTES
[1] N.J.S.A. 43:15A-57.3, L. 1985, c. 283, § 1 says:

Notwithstanding the provisions of section 27 of P.L. 1966, c. 217 (C. 43:15A-57.2) or any other law to the contrary, the retirement system shall not reenroll a former veteran member with more than 20 years of service, all or a part of which shall have been judicial service, if the member is employed again by a county of the first class having a population of less than 800,000 according to the latest federal decennial census within four years following the effective date of retirement, but shall reactivate the member's former account, provided that the member repays any retirement allowance received.
[2] N.J.S.A. 43:15A-29 states:

Upon the employment of a person to whom this act [§ 15A-1 to -14] may apply, his employer shall inform him of his duties and obligations under this act as a condition of his employment.